UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | |
|---|---|
| VIRGIL CROXELL, | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | ) |
| | ) |
| LIFE INSURANCE COMPANY OF | ) |
| NORTH AMERICA, | ) |
|     Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Virgil Croxell, and for his claims and causes of action against Defendant, Life Insurance Company of North America, states:

### PARTIES

1. Virgil Croxell ("Croxell") is a resident and citizen of the State of Kansas.

2. Croxell was born [REDACTED].

3. Life Insurance Company of North America ("LINA") is an out of state insurance company authorized to do business in the State of Kansas.

### JURISDICTION AND VENUE

4. Croxell brings his claim pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

5. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

6. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

7. Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

8. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

9. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

10. Since 2015, GTech Corporation ("IGT"), employed Croxell as a Field Service Technician. The job involved installing satellite dishes on roofs, among other duties.

11. IGT sponsored a group welfare benefits plan for its participating employees ("Plan").

12. The Plan constitutes an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1).

13. The Plan offered long-term disability ("LTD") benefits to covered and eligible IGT employee Plan participants.

14. At all relevant times, Croxell has been a Plan participant and covered person.

15. IGT is the administrator of the Plan.

16. IGT delegated to LINA the function of issuing LTD benefit claim determinations.

17. LINA's group insurance policy ("Policy") funded the Plan.

18. The Policy articulates the conditions that Plan participants must satisfy to receive benefits.

19. The Policy pays eligible participants a monthly benefit for a maximum period of up to the insured's Social Security Normal Retirement Age.

20. The Policy defines "Disabled" as:

> **Disability/Disabled**
> You are considered Disabled if, solely because of Injury or Sickness, you are:
> 1. unable to perform the material duties of your Regular Occupation; and
> 2. unable to earn 80% or more of your Indexed Earnings from working in your Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, you are considered Disabled if, solely due to Injury or Sickness, you are:
> 1. unable to perform the material duties of any occupation for which you are, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 80% or more of your Indexed Earnings.
>
> We will require proof of earnings and continued Disability.

2

21. The Policy pays IGT eligible participants at a rate of 66.7% of their pre-disability earnings.

22. On April 1, 2013, Croxell suffered a work injury, falling into a hole and landing on a pipe.

23. On April 2, 2013, Croxell became disabled due to the effects and limitations of: bilateral foot neuropathy, reflex sympathetic dystrophy of the lower extremities, left medial plantar nerve entrapment, bilateral plantar fasciitis, bilateral extremity allodynia, peroneal tendonitis, bilateral knee osteoarthritis, lumbago, post right ACL repair, post right rotator cuff surgery, impaired cognition, fatigue, chronic bronchitis, and asthma.

24. To treat his impairments, Croxell received care from multiple specialists and underwent physical therapy.

25. Croxell received workers' compensation benefits while he remained employed by IGT but unable to work.

26. On August 7, 2015, IGT terminated Croxell. His workers' compensation case remained open at the time.

27. On November 5, 2015, vocational consultant Michael J. Dreiling completed a vocational assessment. Dreiling concluded that Croxell was completely unemployable in the labor market as a result of his medical limitations, high school education, and lack of skills at the sedentary exertional level.

28. By January 2017, Croxell reached maximum medical improvement.

29. IGT ultimately agreed to resolve Croxell's workers' compensation case.

30. Croxell applied for LTD benefits through the Plan.

31. Croxell also applied for disability benefits from the Social Security Administration, as required by the Policy.

32. On May 12, 2018, Dr. Sherief Garrana, MD, consultative examiner for the Social Security Administration, conducted an examination of Croxell, noting his need for a cane to

3

ambulate.

33. On June 25, 2018, Croxell received a Notice of Award from Social Security, indicating that he would receive $1,464 monthly for Social Security Disability benefits.

34. The Social Security Administration found that an individual of Croxell's age, education, and experience did not possess the skills necessary to work or adjust to full-time work in the national economy.

35. On July 24, 2018, Dr. Kevin Boehle, DO, consulting physician on referral from LINA, reviewed Croxell's medical records, concluding that limitations at approximately the sedentary level were supported by the record and were expected to continue.

36. On July 25, 2018, Cigna approved Croxell's claim for LTD benefits.

37. As a result of his Social Security disability approval, LINA's monthly benefit payment of $1,735 was reduced to $271. LINA's monthly benefit payment was also reduced by the pro-rata share of benefits that Croxell received as a part of his workers' compensation claim.

38. LINA issued back payment of benefits for the first 24 months of Croxell's disability (through September 24, 2015 -- the "Own Occupation" period).

39. On August 6, 2018, Mary Faltaous, MS, CRC, conducted a Transferable Skills Analysis, concluding that Croxell was cable of performing the occupations of Gate Guard[1] and Dispatcher-Maintenance Service. Faltaous did not perform a labor market survey to determine whether the identified jobs in fact existed in Croxell's geographical location.

40. On August 27, 2018, Dr. Boehle again opined that functional limitations are supported by the record and would be expected to continue.

41. On November 6, 2018, LINA denied Croxell's claim for LTD benefits into the "Any

---

[1] By LINA's own admission, the position of Gate Guard is situated at the light (rather than sedentary) exertional level.

4

Occupation" period.

42. On November 7, 2018, counsel for Croxell requested his claim file, documents relied upon by LINA in issuing its decision, and information specifying what forms of evidence would allow Croxell to satisfy the Policy's definition of disabled. Counsel did so in writing, via fax.

43. On December 5, 2018, counsel for Croxell followed up on its November 7, 2018 request. Counsel did so in writing, via fax.

44. On December 20, 2018, LINA provided Croxell's claim file. LINA did not provide its internal rules or guidelines that may have applied in administering the claim, nor did LINA specify with any clarity how Croxell might satisfy the Policy's definition.

45. On February 26, 2019, Dr. Kala Danushkodi, MD, personally examined Croxell for the purposes of evaluating his functional capacity. She concluded that he could stand or walk with a cane for only two hours and could lift only at the waist level.

46. On April 19, 2019, Croxell timely and properly appealed LINA's decision terminating his claim for LTD benefits.

47. With his appeal letter, Croxell provided additional medical evidence in support of his request for the reinstatement of benefits.

48. With his appeal letter, Croxell also sought advance notice and information about LINA's anticipated medical review. These included requests for information about the third-party vendor, its medical professionals and their backgrounds, notice of when they would attempt to contact Croxell's treating physicians, and other specific requests for information.

49. On July 9, 2019, Dr. Carol Hulett, MD, consulting physician on referral from LINA, completed a review of Croxell's medical records, concluding that impairments ongoing from September 29, 2019 were supported by the record.

5

50. On July 24, 2019, Dr. Paul Medrek, MD, consulting physician on referral from LINA, completed a review of Croxell's medical records, concluding that Croxell was functionally limited from September 25, 2015 forward.

51. LINA contracted with third-party vendor Dane Street for the purpose of obtaining its consultants to review Croxell's claim.

52. On July 1, 2019, Dane Street wrote to counsel indicating that it would seek contact for a 10 minute phone call with its physician advisor in the next one to two days. Counsel did not receive such a call.

53. Counsel nevertheless responded to Dane Street, offering specific dates and times during which treating physician Dr. Mark Pinkerton would be available for peer review with Dane Street's reviewing consultants.

54. On July 24, 2019, GENEX Service, Ltd. sent to counsel a fax asking for assistance in providing "any more current evidence to refute the claimant's abilities to perform duties consistent with Dr. Kala Danushkodi's recommendations." Counsel did not respond to this request, as actively undermining Croxell's claim was at odds with the duty to represent and advocate for him.

55. On July 25, 2019, LINA wrote to counsel advising that it required additional time to make a decision on Croxell's claim.

56. On August 6, 2019, Cindy A. Herzog, MS, CRC, Rehabilitation Specialist completed a Transferable Skills Analysis, concluding that Croxell was capable of performing that occupations of Assembler--Semiconductor and Dispatcher–Maintenance Service.

57. On August 15, 2019, LINA upheld its decision terminating Croxell's claim.

58. Croxell remains Disabled, as defined by the Policy.

59. Croxell has exhausted administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

60. Croxell realleges paragraphs 1-59 as is fully set forth herein.

61. Croxell is entitled to all unpaid and accrued LTD benefits, as LINA:

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to consider each of Croxell' medical impairments and resulting limitations;

    c. Mischaracterized medical records and opinions;

    d. Failed to provide its reviewing personnel all relevant evidence;

    e. Provided its vocational consultants inaccurate medical limitations; and

    f. Issued an unfavorable decision that was arbitrary and capricious.

62. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Croxell is entitled to an award of actual damages for losses suffered.

63. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

64. LINA has not satisfied its obligation to pay Croxell benefits.

65. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Croxell prays for judgment against LINA for unpaid benefits, attorney's fees, costs, and prejudgment interest.

### COUNT II
### 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

66. Croxell realleges paragraphs 1-65 as is fully set forth herein.

67. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

    "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for

       a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

68. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

       "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

69. LINA, the Plan's designated claims administrator, is a fiduciary.

70. Croxell participated in and benefited from the Plan as previously indicated.

71. As the payor of benefits and the entity responsible for benefits determinations, LINA operates under an inherent structural conflict of interest.

72. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs LINA's actions as a fiduciary.

73. LINA's vocational expert's 2018 review of Croxell's claim did not involve an actual survey of his geographical labor market. Additionally, the review also indicated that Croxell could perform light work, which was at odds with its own reviewing physician's opinion. The results of this vocational review were predetermined for the purpose of terminating Croxell's claim. As such, it breached its fiduciary duties of loyalty and competence.

74. LINA failed to comply with its internal guidelines and claims processing procedures in evaluating Croxell's disabling impairments, its medical review, and its vocational review. As a result, it breached its fiduciary duties and evidenced a manifestation of its inherent conflict of interest.

75. LINA did not compensate and use its medical and vocational consultants for the

exclusive purpose of providing benefits to Plan participants. Nor did it do so for the purpose of defraying reasonable expenses in administering the Plan. Rather, LINA contracted with these consultants for the purpose of denying benefits, compensating them at rates that did not comport with its duty to defray reasonable expenses. This conduct is indicative of a breach of LINA's fiduciary duties.

76. LINA denied Croxell's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

77. LINA failed to provide Croxell with all of the documents and information that it relied upon, despite counsel's specific request. Likewise, LINA failed to identify the types of evidence that would allow Croxell to satisfy LINA's Policy interpretation.

78. LINA's use of third-party vendor Dane Street violated its duty of loyalty and competence, as Dane Street is not a credible, reliable, or impartial source of independent medical consultants. Similarly, LINA's use of third-party vendor GENEX was inconsistent with its duty of loyalty, competence, and communication. GENEX's request that Croxell's counsel provide evidence to refute Croxell's claim was imprudent and bizarre.[2]

79. LINA did not respond to or attempt to comply with counsel's specific requests on appeal. These were designed to ensure that Croxell received an adequate medical review from LINA's consultants. Dane Street did not contact counsel over the phone as it indicated. Nor did LINA or Dane Street make any effort to comply with counsel's other requests.

80. LINA's decision terminating Croxell's benefits and its conduct in administering claims are a part of a larger systematic breach of fiduciary obligation.

81. LINA failed to discharge its duties solely in the interests of its participants and

---

[2] To the extent that this request was designed for someone other than counsel, it reflects careless communication, as well as evidence that LINA and its vendors were seeking evidence to "refute" Croxell's claim – not to conduct an impartial review.

beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Croxell and the Plan's participants and beneficiaries generally.

82. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Croxell prays for an injunction preventing further unlawful acts by LINA in its fiduciary capacity; an equitable accounting of benefits LINA has withheld; disgorgement of profits enjoyed by LINA in withholding benefits; for restitution under a theory of surcharge; for the imposition of a constructive trust; for an award of attorney fees; for an equitable order prohibiting the use of Dane Street and GENEX in claims administration; for an equitable order removing LINA as the administrator of claims; and for further relief as the Court deems just.

## COUNT III
## STATUTORY AND REGULATORY NONCOMPLIANCE

83. Croxell realleges paragraphs 1-82 as is fully set forth herein.

84. 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(h) afford Croxell the right to a full and fair review on appeal.

85. 29 C.F.R. § 2560.503-1(b) impose on administrators the duty to establish and maintain reasonable claims procedures.

86. Under 29 U.S.C. § 1029 and § 1132(a)(1)(A), an administrator must furnish to a claimant certain information.

87. 29 C.F.R. § 2560.503-1(h)(2)(iii) describes specific information and documents that an administrator must provide to a claimant. This includes information that is relevant to the claim. 29 C.F.R. § 2560.503-1(m)(8).

88. 29 C.F.R. § 2560.503-1(f)(3) requires an adverse benefit determination within a reasonable period of time, but not later than 45 days after receipt of the claim, with certain continued exceptions.

89. 29 C.F.R. § 2560.503-1(f)(3) also states that "notice of extension shall specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues, and the claimant shall be afforded at least 45 days within which to provide the specified information."

90. 29 C.F.R. § 2560.503-1(b)(7) requires that an administrator ensure that "all claims and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision."

91. Croxell has been harmed by LINA's failure to provide his with a description of the information necessary to perfect the claim and an explanation of why the information is necessary. 29 C.F.R. § 2560.503-1(g)(1).

92. LINA exceeded statutory and regulatory deadlines, including 29 C.F.R. § 2560.503-1(f)(3), for adjudicating claims and appeals.

93. These failures afford Croxell the right to pursue any remedy under Section 502(a) of ERISA, including 29 U.S.C. § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

94. WHISEFORE, LINA's failure to comply with regulatory authority and its administrative processes subject its decision to a *de novo* standard of review.

Respectfully submitted,

BURNETTDRISKILL, LLC

By: /s/ Kyle H. Sciolaro
Kyle H. Sciolaro, Mo. # 64568
103 W 26th Ave., Ste. 290
North Kansas City, MO  64116
P: 816.781.4836
F: 816.792.3634
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF